THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

T-MOBILE USA, INC.,

                Plaintiff,

    v.

AUTO-OWNERS INSURANCE COMPANY,

                Defendant.

CASE NO. C20-0567-JCC

ORDER

This matter comes before the Court on Defendant's motion to dismiss or, in the alternative, transfer venue (Dkt. No. 12). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion in part and TRANSFERS this case to the Western District of Michigan for the reasons explained herein.

## I.    BACKGROUND

This case arises out of an insurance coverage dispute. (*See* Dkt. No. 10-3 at 2–4.) Plaintiff T-Mobile USA, Inc. is a wireless network operator incorporated in Delaware with its principal place of business in Bellevue, Washington. (*Id.* at 2.) Defendant Auto-Owners Insurance Company is incorporated in Michigan with its principal place of business in Michigan. (Dkt. No. 12 at 11.) Plaintiff operates many retail stores throughout the country. (*Id.* at 10.)

Plaintiff contracted with Energy Design Service Systems, LLC ("EDSS"), a Michigan

based company, to install lighting in one of its retail stores in New York. (Dkt. No. 10-3. at 2–3.) Pursuant to the master agreement between Plaintiff and EDSS, EDSS was required to "secure 'commercial general liability insurance'" and "include T-Mobile as an additional [i]nsured under [EDSS]'s commercial general liability [i]nsurance policy." (*Id.* at 3.) Accordingly, EDSS obtained a general commercial liability policy from Defendant through an insurance broker, Scully-Monroe Insurance Agency. (*Id.*) Plaintiff argues EDSS named Plaintiff on that policy as an additional insured party. (Dkt. No. 19 at 2.) On June 6, 2014, and November 1, 2014, Scully-Monroe issued two certificates of insurance ("COI") to Plaintiff on behalf of Defendant identifying Plaintiff as a "certificate holder" for the period of September 30, 2013, through September 30, 2014, and September 30, 2014, through September 30, 2015, respectively. (Dkt. Nos. 21-2 at 2, 21-3 at 2, and 19 at 7.)

On September 2, 2014, EDSS's employee was injured while performing the installation. (Dkt. No. 9-1 at 3.) Later that year, the employee sued Plaintiff in the Supreme Court of the State of New York to recover for his injuries. (*See id.* at 3.) On January 27, 2020, Plaintiff notified Defendant of the employee's lawsuit and asked Defendant to pay costs in the litigation pursuant to the aforementioned insurance policy. (*Id.*) On February 19, 2020, after much back and forth between Plaintiff and Defendant, Defendant denied coverage on the basis that Plaintiff was not an additional insured under the policy issued to EDSS. (Dkt. No. 19 at 12.)

On March 12, 2020, Plaintiff filed a complaint in King County Superior Court against Defendant, seeking declaratory judgment and alleging breach of contract, bad faith, and a violation of the Washington State Consumer Protection Act. Wash. Rev. Code § 19.86. (*Id.* at 2.) Plaintiff seeks treble damages, prejudgment interest, and attorney fees. (*Id.* at 3.) On March 16, 2020, Plaintiff effected service of the complaint on the Insurance Commissioner of the State of Washington. (*Id.*) On April 14, 2020, Defendant timely removed the case pursuant to 28 U.S.C. § 1446(b). (*Id.*)

Defendant now moves to dismiss for lack of personal jurisdiction and improper venue,

1   pursuant to Federal Rule of Civil Procedure 12(b)(2)–(3). (Dkt. No. 12.) Alternatively,

2   Defendant seeks a transfer to the U.S. District Court for the Western District of Michigan,

3   Southern Division at Lansing, pursuant to 28 U.S.C. § 1404(a). (*Id.*)

## II.    DISCUSSION

District courts must generally assess personal jurisdiction in advance of other issues such
as venue. *Scott, Blane & Darren Recovery LLC v. Auto-Owners Ins. Co.*, 2014 WL 4258280, slip
op. at 2 (C.D. Cal. 2014) (citing *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979)). The
Court therefore addresses Defendant's Rule 12(b)(2) motion before considering the issue of
venue. "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the
plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539
F.3d 1011, 1015 (9th Cir. 2008). If a court decides the motion without holding a hearing, the
court should grant the motion only if Plaintiff's pleadings and affidavits fail to make out a
"prima facie showing of personal jurisdiction." *Id.* (internal quotation omitted).

### A.    Personal Jurisdiction

A federal district court may exercise personal jurisdiction over a non-resident defendant
only if doing so comports with the long-arm statute of the state in which the district court sits.
*See* Fed. R. Civ. P. 4(k)(1)(A); *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir.
1994). Washington's long-arm statute is co-extensive with the Due Process Clause. *SeaHAVN,
Ltd. v. Glitnir Bank*, 226 P.3d 141, 149 (Wash. Ct. App. 2010). Thus, the question for the Court
is whether the exercise of jurisdiction over Defendant comports with due process. *See
Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413 (1984).

Due process permits a court to "subject a defendant to judgment only when the defendant
has sufficient contacts with the sovereign 'such that the maintenance of the suit does not offend
traditional notions of fair play and substantial justice.'" *J. McIntyre Mach., Ltd. v. Nicastro*, 564
U.S. 873, 880 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The
extent and nature of the contacts a defendant must have depends on which of the two categories

1    of personal jurisdiction a litigant invokes: general or specific. *Goodyear Dunlop Tires*

2    *Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Here, the parties agree specific jurisdiction

3    is the relevant inquiry.[1]

4            Specific jurisdiction is properly exercised when a defendant has "purposefully [availed]

5    itself of the privilege of conducting activities within the forum State, thus invoking the benefits

6    and protections of its laws." *J. McIntyre Mach.*, 564 U.S. at 877 (citing *Hanson v. Denckla*, 357

7    U.S. 235, 253 (1958)). This requirement ensures that a defendant will not be "haled into a

8    jurisdiction through random, fortuitous, or attenuated contacts." *Zeigler v. Indian River City*, 64

9    F.3d 470, 473 (9th Cir. 1995).

10           [W]here the defendant deliberately has engaged in significant activities within a
11           State, or has created continuing obligations between himself and residents of the
             forum, he manifestly has availed himself of the privilege of conducting business
12           there, and because his activities are shielded by the benefits and protections of the
             forum's laws it is presumptively not unreasonable to require him to submit to the

13   _____

14   [1] Plaintiff seems to suggest that general jurisdiction could be proper "by virtue of [Defendant's]
     registration with [the Washington State Office of the Insurance Commissioner] and its
15   designation of the Washington Insurance Commissioner as its agent for purposes of accepting
     service." (*See* Dkt. No. 19 at 15.) But general jurisdiction is properly exercised when a defendant
16   corporation maintains contacts with the forum state that are "so continuous and systematic as to
     render the foreign corporation essentially at home in the forum State." *Ranza v. Nike, Inc.*, 793
17   F.3d 1059, 1069 (9th Cir. 2015) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 758 n.11
     (2014)). A corporation is considered to be 'at home' in a forum state in three circumstances: (1)
18   if it is incorporated in the forum; (2) if it has its principal place of business in the forum; or (3) if
     in "exceptional circumstances" it is "essentially at home" in the forum even though it is not
19   incorporated there and does not have its principal place of business there. *Id.* at 1069–70. The
     third circumstance is the only one that could apply here, and it is not proper in this case. Naming
20   a registered agent in Washington neither renders a corporation at home in Washington nor
     constitutes consent to personal jurisdiction in Washington. *See, e.g.*, *Cooper Carry, Inc. v.*
21   *Outside the Big Box LLC*, No. C08-5630-RBL, Dkt. No. 25 at 3 (W.D. Wash. 2009) (finding no
     general jurisdiction despite the defendant entity having registered with the Secretary of State)
22   (citing *Washington Equipment Mfg. Co., Inc. v. Concrete Placing Co., Inc.*, 85 Wash. App. 240,
     931 P.2d 170 (Wash. Ct. App. 1997) (finding no jurisdiction over Idaho corporation despite
23   appointment of registered agent)). Moreover, *Brown v. Lockheed Martin Corp.*, 814 F.3d 619,
     639–40 (2d Cir. 2016) ("[W]ere we to accept Brown's interpretation of Connecticut's business
24   registration statute, we would risk unravelling the jurisdictional structure envisioned in *Daimler*
25   and *Goodyear* based only on a slender inference of consent pulled from routine bureaucratic
     measures that were largely designed for another purpose entirely.")
26

burdens of litigation in that forum as well.

*Burger King Corp.*, 471 U.S. at 475 (internal quotation marks and citations omitted). In other words, a single contact with a forum state may, if not random or fortuitous, support jurisdiction if the cause of action arises out of that particular intentional contact. *See id.*

The Ninth Circuit uses a three-prong test to determine whether the exercise of specific jurisdiction is appropriate:

1. The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

2. the claim must be one which arises out of or relates to the defendant's forum-related activities; and

3. the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden of establishing the first two prongs. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011). If the plaintiff meets this burden, the burden shifts to the defendant "to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *CollegeSource, Inc.*, 653 F.3d at 1076 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

The first prong of the test for specific jurisdiction includes two distinct analyses: "purposeful direction" and "purposeful availment." *Ziegler*, 64 F.3d at 473. The purposeful direction analysis applies to claims alleging intentional torts, while the purposeful availment analysis applies to claims sounding in contract. *Schwarzenegger*, 374 F.3d at 802. Because Plaintiff's claims are based on an allegation that Defendant breached its contract to defend and indemnify Plaintiff, (*see* Dkt. No. 10-3 at 5–7), the Court evaluates Defendant's contacts with Washington using the purposeful availment analysis.

### 1. Purposeful Availment

A brief review of the purposeful availment doctrine is warranted. First, "[i]t is essential in

ORDER
C20-0567-JCC
PAGE - 5

each case that there be some act by which the defendant purposefully avails . . . [itself] of the privilege of conducting activities within the forum state." *Hanson*, 357 U.S. at 253. "The purposeful availment prong is satisfied when a defendant takes deliberate actions within the forum state or creates continuing obligations to forum residents. It is not required that a defendant be physically present within or have physical contacts with the forum, provided that the defendant's efforts are 'purposefully directed' toward forum residents." *Hirsch v. Blue Cross, Blue Shield*, 800 F.2d 1474, 1478–79 (9th Cir. 1986) (internal citations omitted).

An insurance company can purposefully avail itself of a state's laws by knowingly agreeing to provide insurance to a single forum resident. In *Hirsch*, 800 F.2d at 1476, the defendant insurance company agreed to provide group health insurance to a corporation's employees. When the defendant entered the contract, no employees lived in California. *Id.* After the contract was signed, the company added the plaintiff, a California resident, to the group policy. *Id.* at 1476–77. When the defendant refused to pay several of the plaintiff's medical expenses, the plaintiff filed a complaint against alleging breach of contract and bad faith. *Id.* at 1477. Notably, the plaintiff received a membership card from the defendant that listed the plaintiff's California address on its face. *Id.* The Ninth Circuit found that the defendant had "voluntarily and knowingly obligat[ed] itself to provide health care coverage to [the defendant's] California employees" and thus "purposefully availed itself of the benefits and protections of that forum." *Id.* at 1480.

Here, Plaintiff makes argues that Defendant purposefully availed itself of Washington's laws in three ways: (1) Defendant's broker issued a COI to Plaintiff that specifically identifies Plaintiff as an additional insured under the relevant insurance policy; (2) Defendant issued an insurance policy that provides coverage throughout the entire United States and extends coverage to any qualifying entity without any geographical limitation; and (3) Defendant directed its claims handling activities to Plaintiff in Washington, and the harm resulting from Defendant's bad faith denial was and will be suffered by Plaintiff in Washington. (Dkt. No. 19 at 2–3.)

1    The third argument is not persuasive, as post-accident communications alone are not

2    sufficient to establish specific jurisdiction under a theory of purposeful availment. *See, e.g.,*

3    *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990)

4    (finding that "[o]nly contacts occurring prior to the event causing the litigation may be

5    considered") (internal citations omitted). Plaintiff's only direct contact with Defendant occurred

6    during the claims-handling process, which inherently occurred after the event causing litigation.

7    However, taken together, the first and second arguments are persuasive. The COI clearly

8    listed Plaintiff as an additional insured party and listed Plaintiff's Washington address. While

9    Defendants dispute whether the COI was, in fact, a contract, the COI is at least *prima facie*

10   evidence of a contract. *See, e.g.*, *Hirsch*, 800 F.2d at 1480; *Evanston Ins. Co. v. Certain*

11   *Underwriters at Lloyd's*, No. C16-0755-JLR, Dkt. No. 23 at 7–8 (W.D. Wash. 2016) (exercising

12   jurisdiction over insurer because the insurers' "coverage span[ned] the entire United States," and

13   thus could anticipate being haled into court in a jurisdiction where an insured risk exists). Thus,

14   Plaintiffs have presented sufficient evidence to establish for jurisdictional purposes that

15   Defendant voluntarily and knowingly obligated itself to provide liability insurance to Plaintiff in

16   Washington in exchange for premiums paid by Plaintiffs' contractor. In doing so, Defendant

17   purposefully availed itself of the benefits of Washington even though Defendant is not physically

18   located in Washington and does not have any physical contacts with the state.

19   Furthermore, regardless of whether the certificate is an enforceable contract, it clearly

20   identifies Plaintiff as an additional insured and recognizes that Plaintiff's principal place of

21   business is in Washington. *See also Ridemind, LLC v. S. China Ins. Co.*, No. C14-489-RSL, Dkt.

22   No. 25 at 6–7 (W.D. Wash. 2014). Based on this representation, Plaintiff has presented sufficient

23   evidence for jurisdictional purposes that Defendant created a continuing obligation to a forum

24   resident. *See Burger King,* 471 U.S. at 475 ("[W]here the defendant deliberately has engaged in

25   significant activities within a State, or has created continuing obligations between himself and

26   residents of the forum, he manifestly has availed himself of the privilege of conducting business

ORDER
C20-0567-JCC
PAGE - 7

there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.")

Thus, even though Defendant is not physically located in Washington and does not have any physical contacts with the state, Plaintiff presented sufficient evidence for jurisdictional purposes that Plaintiff was listed as an additional insured in its policy with EDSS and the certificate of insurance specifically identified Plaintiff and Plaintiff's location in Washington. *See Ridemind*, No. C14-489-RSL, Dkt. No. 25 at 7. Therefore, the Court finds that Defendant purposefully availed itself in Washington.

## 2.  Forum-Related Activity

The second prong of the test requires that the claim arises out of or relates to the defendant's forum-related activities. *Schwarzenegger*, 374 F.3d at 802. Courts within the Ninth Circuit rely on a "but for" test to determine if a claim arises out of forum-related activities. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

In this case, the cause of action arises out of the policy EDSS negotiated and executed with broker Scully-Monroe on behalf of Defendant. Thus, the proper inquiry is whether Plaintiff's claims against Defendant would not have arisen "but for" Defendant's contacts with Washington State. *See Evanston Ins. Co.*, No. C16-0755-JLR, Dkt. No. 23 at 12 (W.D. Wash. 2016). Had Defendant not issued general commercial liability policy that (1) listed Plaintiff as an additional insured party located in Washington State and (2) included Washington State in their coverage territory, Plaintiff would not have a claim against Defendant.

Defendant denies that it established an ongoing relationship in Washington. (Dkt. No. 12 at 21–22.) Yet, for jurisdictional purposes, Plaintiff presented sufficient evidence to show that Defendant's broker issued COIs listing Plaintiff as an additional certificate holder, including Plaintiff's Washington address.[2] Thus, Defendant's single intentional act of issuing a COI listing

---

[2] The Court makes no finding regarding whether the COI is an enforceable contract.

Plaintiff as an additional insured party created "continuing obligations" to Plaintiff, a forum

resident. *See Burger King Corp.*, 471 U.S. at 475. Therefore, the Court FINDS that Plaintiff's

claim arises out of Defendant's forum related activity.

### 3.  Reasonableness

Given that Defendant purposefully availed itself of Washington's laws in a way that is

related to Plaintiff's claim, the Court must determine if it would be reasonable for the Court to

exercise jurisdiction over Defendant. Defendant must present a "compelling case" that an

exercise of personal jurisdiction would be unreasonable. *Burger King,* 471 U.S. at 476–

77.  Defendant must present a "compelling case" that an exercise of personal jurisdiction would

be unreasonable. *See Haisten*, 784 F.2d at 1400. Relevant factors include

> (1) the extent of the defendant['s] purposeful injection into the forum state's affairs;
> (2) the burden on the defendant of defending in the forum; (3) the extent of the
> conflict with the sovereignty of the defendant's state; (4) the forum state's interest
> in adjudicating the dispute; (5) the most efficient judicial resolution of the
> controversy; (6) the importance of the forum to the plaintiff's interest in convenient
> and effective relief; and (7) the existence of an alternative forum.

*CollegeSource, Inc.*, 653 F.3d at 1079. No one factor is dispositive; the Court must balance all of

them. *See id.*

### a.  Extent of Purposeful Injection

If a defendant purposefully injected itself into the forum state's affairs, then personal

jurisdiction in the forum may be reasonable. *CollegeSource, Inc.*, 653 F.3d at 1079. "Even if

there is sufficient 'interjection' into the state to satisfy the purposeful availment prong, the

degree of interjection is a factor to be weighed in assessing the overall reasonableness of

jurisdiction under the reasonableness prong"; "the smaller the element of purposeful interjection,

the less is jurisdiction to be anticipated and the less reasonable is its exercise." *Id.* (brackets

omitted).

Here, the Court has already determined that Defendant purposefully availed itself of the

ORDER
C20-0567-JCC
PAGE - 9

1    privilege of doing business in Washington. *See supra* Section II.A.1. Specifically, Defendant

2    pays annual renewal, filing, and operating fees to Washington State's OIC in order to preserve

3    the possibility of insuring persons or risks within Washington. (*See* Dkt. No. 19 at 32.) That

4    possibility actualized when Defendant's broker issued a COI to Plaintiff, which listed Plaintiff as

5    an additional certificate holder in EDSS's insurance policy. In claiming that it has "never

6    actually availed itself" of the opportunity to insure a Washington resident, Defendant seriously

7    underestimates the significance of insuring a forum resident. (*Id.* at 32.) Thus, Defendant

8    purposefully injected itself into Washington's affairs. Therefore, the Court FINDS that this factor

9    weighs in favor of exercising personal jurisdiction.

10                                  *b.  Burden on Defendant*

11            Next, the Court considers the burden on Defendant of defending itself in Washington.

12    *CollegeSource, Inc.*, 653 F.3d at 1079. "A defendant's burden in litigating in the forum is a

13    factor in the assessment of reasonableness, but unless the 'inconvenience is so great as to

14    constitute a deprivation of due process, it will not overcome clear justifications for the exercise

15    of jurisdiction.'" *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) (internal

16    citations omitted). "[W]ith the advances in transportation and telecommunications and the

17    increasing interstate practice of law, any burden [of litigation in a forum other than one's

18    residence] is substantially less than in days past." *Menken v. Emm,* 503 F.3d 1050, 1060 (9th Cir.

19    2007) (quoting *CE Distrib., LLC v. New Sensor Corp.,* 380 F.3d 1107, 1112 (9th Cir. 2004)).

20    Additionally, inconvenience to a party who has minimum contacts with the forum often more

21    appropriately is handled through changes in venue, and not by refusing to exercise

22    jurisdiction. *Burger King,* 471 U.S. at 477–78 & n. 20, 483–84.

23            Here, Defendant is a Michigan company that has no employees, agents, or offices located

24    in Washington and does not actively conduct business here. (Dkt. No. 12 at 27.) Although it

25    would be somewhat burdensome for Defendant to litigate in Washington, since its employees

26    and evidence are located elsewhere, modern transportation reduces this burden. *Menken*, 503

1    F.3d at 1060. Defending this action in Washington would not create such a significant burden for

2    Defendant and the essential non-parties that it would offend due process. *See Hirsch*, 800 F.2d at

3    1481. Therefore, the Court FINDS this factor weighs against exercising personal jurisdiction

4    only slightly.

5                              *c.  Conflict with Michigan's Sovereignty*

6            Third, the Court considers whether exercising jurisdiction over Defendant would conflict

7    with Michigan's sovereignty. *CollegeSource, Inc.*, 653 F.3d at 1079. "The due process

8    limitations on suits against non-residents have their roots largely in our constitutional federalism

9    and the resultant sovereignty of states." *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266,

10   1272 (9th Cir. 1981). Purposeful interjection requires a defendant to "in some way step outside

11   the exclusive protection of [their] own state and engage in activities touching another sovereign."

12   *Id.* After an out-of-state defendant's purposeful injection is established, the interests of multiple

13   sovereigns will necessarily be involved.

14           Here, Washington, Michigan, and New York have an interest in this litigation. As courts

15   previously have observed, however, choice-of-law rules, rather than jurisdictional tests, are

16   designed to accommodate these concerns. *See Burger King,* 471 U.S. at 483 n.26 (in minimum

17   contacts analysis, one assumes that two states' interests will conflict); *Haisten*, 784 F.2d at

18   1401–02. Plaintiff contends that "the Court's exercise of jurisdiction would present no colorable

19   conflict with Michigan's sovereignty." (Dkt. No. 19 at 25.) Plaintiff's assertion is belied by both

20   parties' substantial briefing comparing the conflicts between Washington's and Michigan's

21   insurance laws. (*See id.* at 30–32; Dkt. No. 12 at 31–34.) However, this is fundamentally a

22   choice-of-law question, not a jurisdictional one. *See Burger King*, 471 U.S. at 483–84. Thus, the

23   Court FINDS the third factor is neutral.

24                              *d.  Washington's Interest in the Dispute*

25           Fourth, the Court considers the forum state's interest in adjudicating the dispute.

26   *CollegeSource, Inc.*, 653 F.3d at 1079. Washington has a "manifest" interest in protecting its

1  citizens from injuries inflicted by out-of-state actors who provide insurance coverage to

2  Washington residents. *See* Wash. Rev. Code § 4.28.185(1)(d); *Hirsch*, 800 F.2d at 1481 (finding

3  California's interest in insurance dispute "exceptionally strong" due to a need for effective

4  redress against insurers refusing to pay claims); *T-Mobile USA, Inc. v. Selective Insurance*

5  *Company of America*, 194 Wash. 2d 413, 421 (2019). Thus, the Court FINDS this factor weighs

6  in favor of exercising personal jurisdiction.

7  *e. Judicial Efficiency*

8  Fifth, the Court considers the most efficient judicial resolution of the controversy.

9  *CollegeSource, Inc.*, 653 F.3d at 1079. This factor focuses on "where the witnesses and the

10  evidence are likely to be located." *Loral Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th

11  Cir. 1995). However, this factor is "no longer weighed heavily given the modern advances in

12  communication and transportation." *Panavision Int'l*, 141 F.3d at 1323.

13  Here, the case seems to turn on two issues: (1) whether Defendant agreed to insure

14  Plaintiff, and (2) if so, what that insurance coverage entails. (Dkt. Nos. 12 at 11–12, 19 at 2.) The

15  second question is likely a matter of law that does not depend on discovery. However, the first

16  question may involve factual disputes that turn on the information provided by witnesses—who

17  are primarily located in Michigan. (Dkt. No. 12 at 33.) Defendant repeatedly alludes to that fact,

18  and Plaintiff has not refuted it. (Dkt. Nos. 12 at 33, 19 at 30.) Thus, litigating this case in the

19  Western District of Washington is not likely to provide the most efficient judicial resolution of

20  this controversy. The allegations and claims in the complaint revolve around the policy that was

21  issued by a Michigan insurance broker, on behalf of a Michigan-based insurance company, to

22  EDSS, a Michigan lighting company. (*See* Dkt. No. 12 at 33.) The underlying litigation and the

23  place of the alleged accident is in New York. In fact, this litigation is connected to the forum

24  only because it is the location of Plaintiff's principal place of business and Plaintiff's employee-

25  witnesses.

26  While the nature of the injury suffered by Plaintiff is relevant to the inquiry, so, too, are

the reasons Defendant denied coverage. *See Robinson Corp. v. Auto-Owners Ins. Co.*, 304 F. Supp. 2d 1232, 1238 (D. Haw. 2003). Thus, evidence and witnesses needed to decide these issues may come from Washington, but they will primarily come from Michigan. Therefore, the Court FINDS that the fifth factor weighs against exercising personal jurisdiction.

### f.   Plaintiff's Interest in Forum

Sixth, the Court considers the importance of the forum to Plaintiff's interest in convenient and effective relief. *CollegeSource, Inc.*, 653 F.3d at 1079. Like the previous factor, though, this is not afforded significant weight because "no doctorate in astrophysics is required to deduce that trying a case where one lives is almost always a plaintiff's preference." *Roth v. Garcia-Marquez*, 942 F.2d 617, 624 (9th Cir. 1991). Plaintiff is a Washington corporation that seeks relief for injuries allegedly arising out of litigation in a New York state court. And, as courts have observed, "plaintiffs would be severely disadvantaged if forced to 'follow the insurance company to a distant State in order to hold it legally accountable . . . thus in effect making the company judgment proof.'" *Hirsch*, 800 F.2d at 1481 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Thus, litigating this case in Washington is appropriately convenient and favorable for Plaintiff. Therefore, the Court FINDS that the sixth factor weighs in favor of exercising personal jurisdiction.

### g.   Adequate Alternative Forum

Finally, the Court must determine whether an adequate alternative forum exists. *CollegeSource, Inc.*, 653 F.3d at 1079. This factor is considered only if the forum state is shown to be unreasonable. *Id.* at 1080. Defendant has not sufficiently demonstrated that Washington is an unreasonable forum, so the Court need not assess the issue further.

Balancing the relevant factors, the Court concludes that Defendant has failed to establish a "compelling case" that the exercise of jurisdiction would be unreasonable. Washington may not be the most efficient forum to resolve this dispute, but that does not render an exercise of personal jurisdiction unconstitutional. And while Defendant's contact with the forum is limited,

1    the contact it did have established a significant, ongoing relationship with a Washington resident

2    that gives Washington an interest in this dispute. Therefore, the Court FINDS that it has specific

3    jurisdiction over Defendant.

4    **B.    Transfer of Venue**

5    In the alternative, Defendant seeks to dismiss the case for improper venue or transfer to

6    Michigan. The venue statute provides that a civil action based on diversity generally must be

7    brought in either "(1) a judicial district where any defendant resides, if all defendants reside in

8    the same State, [or] (2) a judicial district in which a substantial part of the events or omissions

9    giving rise to the claim occurred, or a substantial part of property that is the subject of the action

10   is situated." *See* 28 U.S.C. § 1391 (also allowing a case to be brought in a district "in which any

11   defendant is subject to personal jurisdiction at the time the action is commenced," but only if no

12   other district satisfies either of the first two criteria). Pursuant to 28 U.S.C. § 1404(a), the Court

13   may transfer a civil action to any other district court in which the action may have been brought

14   "[f]or the convenience of parties and witnesses, in the interest of justice."

15   The court has discretion "to adjudicate motions for transfer according to an

16   'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC*

17   *Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (internal citation omitted). A motion to

18   transfer venue requires the court to weigh multiple factors in its determination whether transfer is

19   appropriate in a particular case, including

20   (1) the location where the relevant agreements were negotiated and executed, (2)
21   the state that is most familiar with the governing law, (3) the plaintiff's choice of
     forum, (4) the respective parties' contacts with the forum, (5) the contacts relating
22   to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs
     of litigation in the two forums, (7) the availability of compulsory process to compel
23   attendance of unwilling non-party witnesses, and (8) the ease of access to sources
     of proof.
24

25   *Id.* at 498–99. These factors are substantially similar to those used to evaluate reasonableness in

26   specific jurisdiction analysis.

1    Here, Defendant requests a transfer to the Western District of Michigan as an alternative

2    remedy to dismissal. (*See* Dkt. No. 12 at 31–34.) Plaintiff does not appear to dispute that venue

3    is proper in Michigan. Rather, Plaintiff urges the Court to find Washington is also a proper

4    venue. (*See* Dkt. No. 19 at 28.)

5    Several factors contribute to the Court's decision to transfer the case to the Western

6    District of Michigan. *See Jones*, 211 F.3d at 498–99. First, "a substantial part of the events or

7    omissions giving rise to the claim occurred" in the Western District of Michigan, making it a

8    proper venue. *See* 28 U.S.C. § 1391. In contrast, the Western District of Washington's

9    connection to the case consists only of the fact that Defendant purportedly insured a Washington

10   company. *Id.* Next, regardless of the substantive state law applied in this case, federal courts are

11   equally equipped to apply distant state laws when the law is not complex. *See Jones*, 211 F.3d at

12   498; *Inlandboatmen's Union of the Pacific v. Foss Maritime Co.*, No. C14-1403-JLR, Dkt. No.

13   20 at 6 (W.D. Wash. 2015).

14   Although Plaintiff's choice of forum receives substantial deference and Defendant must

15   "make a strong showing of inconvenience" to upset that choice, *see Decker Coal Co. v.

16   Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986), Plaintiff's preference is not

17   dispositive, *see Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). Further, courts are hesitant to

18   defer to the plaintiff's choice of forum when the case lacks strong ties to that district. *See Pedigo

19   Prods., Inc. v. Kimberly-Clark Worldwide, Inc.*, No. C12-5502-BHS, Dkt. No. 35 at 5 (W.D.

20   Wash. 2012) ("Where the action has little connection with the chosen forum, less deference is

21   accorded plaintiff's choice, even if plaintiff is a resident of the forum state."). As discussed

22   above, this case features few connections to Washington. Almost all relevant events occurred in

23   Michigan and New York, and the substantial majority of potential witnesses and relevant

24   documents are located in Michigan. (Dkt. No. 12 at 33–34.) Even considering the presumption in

25   favor of Plaintiff's choice of forum, the Court finds that the lack of strong connections to

26   Washington weigh in favor of transfer. *See Inlandboatmen's Union of the Pacific*, No. C14-

1403-JLR, Dkt. No. 20 at 7.

Finally, if a "transfer would merely shift rather than eliminate the inconvenience" and costs of litigation, the factor weighs against transfer. *Decker*, 805 F.2d at 843. A substantial number of the non-party witnesses are located in Michigan, including employees from Scully-Monroe, EDSS, and Defendant. (*See* Dkt. No. 12 at 32–34.) The only witnesses that will come from Washington are Plaintiff's employees that dealt with Defendant during the claims-handling process. Any other sources of proof, such as documents and other forms of evidence, can be produced electronically. *See Jones*, 211 F.3d at 499. On balance, the Court finds that this factor weighs slightly in favor of transfer.

In light of its analysis, the Court is assured that transfer is the appropriate remedy in this case. Overall, there is only one factor that weighs against transfer: Plaintiff's choice of forum. Although the plaintiff's choice is afforded substantial deference, the Court concludes that Plaintiff's choice does not overcome the seven other factors that are either neutral or weigh in favor of transfer. Thus, Washington and Michigan courts are equipped to handle the case, but Michigan also provides the appropriate venue. *See id.* at 498–99. Because venue in Michigan is appropriate, the Court need not decide whether venue is improper in Washington. Therefore, the Court finds that transfer to the Western District of Michigan is "in the interest of justice." 28 U.S.C. § 1404(a).

## III.    CONCLUSION

For the foregoing reasons, the Court hereby GRANTS in part Defendant's motion to dismiss or, in the alternative, transfer venue, (Dkt. No. 12), and TRANSFERS this case to the U.S. District Court for the Western District of Michigan, Southern Division at Lansing. The Clerk is DIRECTED to statistically close this case in this district.

//

//

//

ORDER
C20-0567-JCC
PAGE - 16

1    DATED this 18th day of August 2020.

2

3

4    _____

5    John C. Coughenour
     UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
C20-0567-JCC
PAGE - 17